666 NORTH ORLEANS, INC., Plaintiff-Appellee, *v.* LARRY KORS *et al.,* Defendants-Appellants.

HENRY J. CLEYS *et al.,* Cross-Plaintiffs-Appellees, *v.* LARRY KORS *et al.,* Cross-Defendants-Appellants.

(No. 57878;

First District (4th Division)—April 18, 1973.

Levin and Berger, of Chicago, (Burton Berger, of counsel,) for appellants.

Brown, Stine, Cook & Hanson, of Chicago, (John H. Hanson, of counsel,) for appellees.

Mr. JUSTICE ADESKO delivered the opinion of the court:

On November 30, 1971, 666 North Orleans, Inc., (hereinafter "666"), lessee for the premises at 664-672 N. Orleans, Chicago, Illinois, filed a complaint for declaratory judgment to declare the respective right, title and interest of Larry Kors and Arrow Messenger Services, Inc., (hereinafter "Kors"), as contract purchasers, and Henry J. Cleys and Gladys Cleys (hereinafter "Cleys"), as contract sellers, to said real estate in order that the plaintiff might pay rent to the rightful party and thereby remain in possession of the premises. The Cleys filed a cross-complaint alleging that Kors defaulted under the Articles of Agreement of Warranty Deed; that the Cleys perfected a forfeiture of the interest of Kors; and that therefore the Cleys are the legal owners of the premises entitled to receive the rent from the plaintiff. Kors filed an answer alleging that the Cleys had waived any default; that the alleged forfeiture was legally ineffective; and that Kors was entitled to receive the rent from the plaintiff. The trial court held that Kors lost all right, title and interest in the subject real estate; that the Cleys are the owners in fee of the subject premises; and that 666 is in possession as a tenant of the Cleys.

On appeal Kors contends (1) that the Cleys, as contract sellers, did not properly and effectively terminate all right, title and interest of Kors as contract purchaser; and (2) that the contract sellers must file a forcible detainer action to obtain possession of the premises from the contract purchaser.

The parties entered into a Stipulation of Facts, which recited that the Articles of Agreement for Warranty Deed were entered into on August 19, 1963, between the Cleys as contract sellers and Larry Kors as contract purchasers, for the sale of the premises at 664-672 N. Orleans Street, Chicago; that the Agreement provided for monthly installment payments, for the payment of all subsequent real estate taxes and special assessments by contract purchasers, and for the maintenance of fire and extended coverage and public liability insurance by contract purchasers at purchasers' cost. It was also stipulated that the general real estate taxes for the year 1969 were unpaid, sold, and not redeemed; that in recent years the tax bills were sent directly to Kors by the Collector and

the Cleys had no actual notice of the payment or nonpayment of taxes when due; that on October 15, 1971, the Cleys redeemed the 1969 real estate taxes; and that on October 26, 1971, the Cleys paid both installments and accrued interest due on the 1970 real estate taxes.

It was also stipulated that because of the failure of Kors to pay the insurance premiums on the premises, the insurance was cancelled in June, 1971; that the Cleys obtained their own insurance coverage in July, 1971; and that Kors obtained insurance coverage on January 24, 1972.

It was also stipulated that on November 3, 1971, Kors tendered the Cleys' checks for the September and October installments due upon the contract and also a check in substantially the amount paid by the Cleys to redeem the 1969 real estate taxes, which tender was refused.

It was also stipulated that Arrow Messenger Services, Inc. was a defunct corporation, has been dissolved, and has no interest in the premises.

Kors states that the Stipulation of Facts shows that although the monthly payments of $250 due from Kors under the Articles of Agreement for Warranty Deed were frequently late, the Cleys accepted said checks through August 1971 and that on occasion Kors did not pay the real estate taxes when due, but did pay the same subsequently. He argues that although the contract sellers knew of the late payments and failure to pay the taxes when due, they failed to serve notice upon the contract purchaser requiring the contract purchaser to make his payment on time and, therefore, the Cleys have waived the prompt payment provision of the Agreement.

The record shows that the Cleys attempted to give Kors notice of the defaults and an opportunity to cure them. It was stipulated that on June 29, 1971, the Cleys sent a properly addressed certified letter to Kors to the proper address for the service of notice on Kors, which was returned "Unclaimed". This letter notified Kors of the real estate tax and insurance premium defaults and demanded that said defaults be cured by July 12, 1971. A copy of the June 29, 1971, letter was enclosed in a letter dated August 10, 1971, sent to Kors by regular mail to the same address. This letter was received by Kors a day or two after it was mailed. In addition to enclosing a copy of the June 29, 1971, letter, the letter of August 10, 1971, stated that unless the defaults were cured within ten days, steps would be taken to cancel the contract for the purchase of the property. On September 8, 1971, a letter was sent to Kors at the same address by certified mail, return receipt requested, declaring the contract forfeited. This letter was returned "Unclaimed". On September 15, 1971, more than 30 days after Kors admittedly received the letter of August 10, 1971, a Declaration of Forfeiture was filed in

the office of the Recorder of Deeds of Cook County, Illinois as Document No. 21-622-917.

Kors' first contention on appeal was that the contract sellers, the Cleys, did not properly and effectively terminate all right, title and interest of Kors in said real estate.

■■ In *Eade v. Brownlee*, 29 Ill.2d 214, 193 N.E.2d 786, the court said, at page 219:

> "Courts of equity abhor forfeitures, but where a forfeiture has been declared in the manner prescribed by the parties to a contract the court will give effect to the contract. Thus, the general rule is stated in *Johnson v. Crouch*, 325 Ill. 559, at pages 568-9: 'Where a forfeiture has been declared in the manner prescribed by the parties to a contract a court of equity will not ignore their action and make another contract for them, but it will give effect to the existing contract.' The same rule is stated and like clauses held valid in *McDonald v. Bartlett*, 324 Ill. 549; *Lang v. Hedenberg*, 277 Ill. 368, and *Kingsley v. Roeder*, 2 Ill.2d 131."

■■ Kors relies on the case of *Kingsley v. Roeder*, 2 Ill.2d 131, 117 N.E.2d 82, for his contention that the contract sellers waived their right to strict compliance with the payment provisions of the contract. However, in *Kingsley* the contract sellers made no diligent inquiry or effort to give contract purchasers notice of their intention to declare a forfeiture. In the *Kingsley* case the seller sent the notice of intent to exercise the forfeiture clause to a place where he knew the purchasers would not receive it and made no other attempt to notify the purchasers. Also in the *Kingsley* case the purchasers immediately cured all the defects complained of when they learned of purchasers' intention to enforce strict compliance with the terms of the contract. In the case at bar, Kors did not cure his defaults upon receiving notice from the Cleys and when Kors did later tender amounts due, he still left outstanding the 1970 real estate taxes and interest paid by the Cleys and the insurance premiums paid by the Cleys in July, 1971. The Cleys took all reasonable steps available to comply with the provisions of the Agreement for the giving of notice of the defaults to Kors, with an opportunity for him to cure said defects; and therefore upon Kors' failure to cure the defaults, Cleys correctly declared a forfeiture of the Agreement.

Kors' second contention on appeal was that the contract sellers, the Cleys, must file a forcible entry and detainer action in order to obtain possession of the premises from the contract purchaser, Kors.

Section 13 of the Forcible Entry Detainer Act provides in part:

> "Nothing herein contained shall be construed as affecting the right of a seller of such premises to any lawful remedy or relief

other than that provided by this Act." Ill. Rev. Stat. 1971, ch. 57, par. 13.

■■ In the case at bar the Cleys pursued another lawful remedy. The question of the rights of the Cleys, as contract sellers, and Kors, as contract purchaser, were put in issue by the 666 Corporation, lessee of the premises, when it filed a complaint for declaratory judgment for a judicial determination of the rights of the Cleys and Kors in the premises at 664-672 North Orleans, Chicago, Illinois, in order that the 666 Corporation might pay rent to the lawful party and thereby remain in possession of the premises. The Cleys then filed a cross-complaint requesting a determination by the court that the Articles of Agreement for Warranty Deed had been forfeited and that the Cleys were the owners in fee of the subject premises.

The trial court held that because the 666 Corporation filed its declaratory judgment action to adjudicate the rights of the parties the issues of whether or not Kors was in default and whether the Cleys had properly declared a forfeiture were properly before the court for determination. The trial court correctly determined that the Cleys had properly and effectively terminated all the right, title and interest of Kors in the premises.

■■ Kors claimed a right to possession based on a lease executed contrary to the terms of the agreement with the Cleys. Kors is not in possession of the premises in question and therefore a forcible entry and detainer action is not necessary.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.